UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PATRICK PENN and ALICE PENN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No.: 3:22-CV-264-KAC-DCP |
| | ) |
| WILDERNESS DEVELOPMENT | ) |
| CORPORATION d/b/a SOAKY | ) |
| MOUNTAIN WATERPARK, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action is before the Court on the "Motion for Summary Judgment" filed by Defendant Wilderness Development Corporation d/b/a Soaky Mountain Waterpark [Doc. 38]. Because there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 38].

**I.     Background[1]**

Defendant owns and operates a waterpark in Sevierville, Tennessee (the "Park") [Doc. 38-5 at 1 (Affidavit of Marc Playman ("Playman Aff.") ¶ 2)]. Defendant has a policy that "no glass of any kind is allowed inside the [P]ark" [Docs. 41-8 at 2 (Deposition of Ryan Vaden ("Vaden Dep.") 33:17-19); 41-5 at 10 (Deposition of Mark Playman ("Playman Dep.") 36:4-8)]. Guests often "walk[] around barefoot" while visiting the Park, [Doc. 41-8 at 2 (Vaden Dep. 33:17-19)],

---

[1] The Court describes the facts in the light most favorable to Plaintiffs, the nonmoving Parties. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

1

and glass is a potential hazard [Docs. 41-7 at 3 (Deposition of Joelle Kedzic ("Kedzic Dep.") 38:1-9); 41-5 at 11 (Playman Dep. 37:9-15)].

Before allowing guests into the Park, Defendant performs "bag checks" to prevent prohibited items, including glass, from entering [Doc. 41-8 at 2 (Vaden Dep. 33:5-9); *see also* Doc. 41-5 at 9 (Playman Dep. 33:8-20)]. Signs at the entry gate state that glass is "not allowed" on the premises [Doc. 41-8 at 2 (Vaden Dep. 33:6-9); *see also* Doc. 41-5 at 9, 10 (Playman Dep. 33:8-14, 36:3-8)]. But that prohibition does not extend to eyeglasses and cellphones that may have a glass screen [*See* Doc. 41-5 at 10 (Playman Dep. 36:4-24)].

Each day, before opening and after closing, Defendant deploys employees throughout the Park, including to the wave pool area, to perform a "checklist" [Doc. 41-5 at 6 (Playman Dep. 29:11-22)]. As part of the "checklist," employees look for "litter" and "debris," and if they find glass, they must record it on the "checklist" and "dispos[e] of it properly" [*Id.* at 6, 7-8 (Playman Dep. 29:1-8, 30:7-31:7)]. During shifts in the middle of the day, "lead lifeguards" "assist the supervisor" by looking for hazards and cleaning up [Doc. 38-4 at 9 (Kedzic Dep. 28:19-25)]. There is no "checklist for middle of the day inspections" [Doc. 41-5 at 14 (Playman Dep. 62:5-8)]. Defendant's Director of Operations also does a daily "loop" to "make sure" "everybody" is "making the appropriate rounds looking for issues" [*See* Doc. 38-4 at 7 (Kedzic Dep. 26:8-18)].

Before the events relevant to this action, no guest had ever reported the presence of glass in the Park "to any member of the staff" at the Park [*Id.* at 8 (Kedzic Dep. 27:4-7)]. Defendant had only found glass in the Park on one occasion [*See id.* (Kedzic Dep. 27:8-21)]. On that occasion in 2020, an employee found "broken glass" "[a]t the wave pool at the back by the trash can" [*Id.*]. "[G]lass or any other debris" had never "been discovered in a pool" at the Park [*Id.* at 9 (Kedzic Dep. 28:6-8)].

2

On July 25, 2021, Plaintiffs Patrick and Alice Penn, husband and wife, visited the Park [Doc. 38-1 at 6 (Deposition of Alice Penn ("A. Penn Dep.") 15:8-24)]. The Park was "crowded," [*Id.* at 8 (A. Penn Dep. 25:16-20)]. Sometime before 2:00 p.m. that day, Plaintiffs visited the "wave pool" area [*Id.* at 8, 18 (A. Penn Dep. 25:5-15, 36:19-23)].

Mr. Penn entered the wave pool first [*Id.* at 12 (A. Penn Dep. 29:20-25)]. "At about the same time," Mrs. Penn saw two pieces of broken glass "six feet" "from the edge of the" wave pool [*Id.* at 13, 15, 21 (A. Penn Dep. 30:1-2, 32:1-13, 39:1-17); *see also* Doc. 38-3 at 11 (Patrick Penn Response to Interrogatories)]. The glass was one-inch in size and "looked like the" "thick" part of the "bottom of a bottle" [Doc. 38-1 at 14, 15 (A. Penn Dep. 31:10-15, 32:1-8)]. No evidence shows how long the glass had been on the ground before Mrs. Penn saw it [*See, e.g.*, *id.* at 12-13, 24 (A. Penn Dep. 29:6-30:2, 91:15-19)].

Mrs. Penn threw the glass away and entered the wave pool to meet Mr. Penn [*Id.* at 15 (A. Penn Dep. 32:18-23)]. "Twenty (20) minutes" later, Plaintiffs exited the wave pool and sat down in the wave pool area [Docs. 41-4 at 7 (A. Penn Dep. 34:10-17); 38-1 at 9, 17 (A. Penn Dep. 26:1-4, 34:10-15)]. After "a while," at approximately 2:00 p.m., Plaintiffs "noticed there was blood on the concrete" where Mr. Penn had just "stepped away from" [Docs. 38-1 at 9, 10 (A. Penn Dep. 26:1-7, 27:1-8); 38-2 at 9 (P. Penn Dep. 26:1-17)]. And Mrs. Penn saw a "cut on the bottom" of Mr. Penn's foot [Docs. 38-1 at 10-11, 18 (A. Penn. Dep. 27:6-28:7, 36:19-21); 38-3 at 11 (Patrick Penn Response to Interrogatories); 41-1 at 4 (P. Penn Dep. 28:1-4)]. Mr. Penn never saw the glass that Mrs. Penn saw [Doc. 38-2 at 10 (P. Penn Dep. 27:9-16)]. And he "does not recall stepping" on any glass [*Id.*].

On July 18, 2022 Plaintiffs initially filed suit [*See* Doc. 1-1 at 1]. Defendant removed [*See* Doc. 1]. The Complaint alleges that Defendant was negligent in maintaining the

3

Park, causing (1) Mr. Penn's injury from the broken glass and (2) Mrs. Penn to suffer a loss of consortium [Doc. 1-1 at 3]. During the litigation of this matter, Dr. Allison Osinski opined that she would "expect [employees] in a heavily used facility like [Defendant's] to be" inspecting "their area" for hazards such as glass "at least every ten minutes or so" [Doc. 41-6 at 2 (Deposition of Dr. Allison Osinski ("Osinski Dep.") 118:9-17)].

Defendant filed the instant "Motion for Summary Judgment" in June 2023 [Doc. 38]. Shortly thereafter, on July 23, 2023, the Tennessee Supreme Court granted an application for permission to appeal in *Trentham v. Mid-America Apartments, LP, et al.*. *See* No. M2021-01511-SC-R11-CV, 2025 WL 45650 at *5 (Tenn. Jan. 8, 2025). The Tennessee Supreme Court heard *Trentham* on December 6, 2023. *Id.* The appeal promised to address several "landmark" issues of Tennessee premises-liability law directly relevant to this action. *See id.* Shortly after *Trentham* was argued, the Court stayed this action. On January 8, 2025, the Tennessee Supreme Court decided *Trentham*. *See id.* at 1. *Trentham* guides the Court's substantive analysis here.

II.     **Analysis**

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the facts in the light most favorable to the nonmoving parties and makes all reasonable inferences that can be drawn from those facts in their favor. *Matsushita*, 475 U.S. at 587. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 323 (6th Cir. 2023) (citing *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019)). Once the moving party has met its burden, the nonmoving parties "must set forth specific

4

facts showing that there is a genuine issue for trial." *See Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022) (quotation omitted).

A dispute over a material fact is only a "genuine issue" if a reasonable jury could find for the nonmoving parties on that issue. *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must enter summary judgment where a party "fails to make a showing sufficient to establish the extent of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of a scintilla of evidence in support of" a nonmovant's position is "insufficient" to overcome a summary judgment motion. *See Bennett*, 86 F.4th at 323 (citation omitted).

A federal court sitting in diversity applies the choice of law rules of the forum in which it sits. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citation omitted). Tennessee applies "the law of the state where the injury occurred" "unless some other state has a more significant relationship to the litigation." *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). Mr. Penn's injury occurred in Tennessee, and no other state has a more significant relationship to the litigation. Therefore, Tennessee law applies here. *See id.*

Under Tennessee law, "to establish a prima facie case for premises liability based on negligence, the plaintiff must prove: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Trentham*, No. M2021-01511-SC-R11-CV, 2025 WL 45650 at *7 (citation omitted). The crux[2] of the instant Motion for

---

[2] Defendant also argues that the Court should grant it summary judgment because "Plaintiff's entire theory of the case . . . is wholly speculative" and "as a sanction for Plaintiffs' spoliating evidence" [*See* Doc. 38 at 1]. But the Court need not, and does not, reach these issues.

5

Summary Judgment is whether Defendant owed "a duty of care" to Mr. Penn [*See* Doc. 38 at 1]. Even presuming that (1) glass existed at the Park on July 25, 2021 and (2) the glass caused Mr. Penn's injury, Plaintiffs must show that Defendant owed Mr. Penn a duty of care. *See Trentham*, No. M2021-01511-SC-R11-CV, 2025 WL 45650 at *7.

Plaintiffs can demonstrate a duty of care in one of two ways: (1) showing that the "condition was caused or created by the owner, operator or his agent" or (2) "if the condition was created by someone other than the owner, operator, or his agent, [showing] that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Id.* (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). Here, Plaintiffs argue (1) that Defendant "caused or created" the condition by negligently maintaining the Park and (2) in the alternative, that Defendant had "constructive notice that the condition existed" before the injury [*See* Doc. 45 at 5, 6]. Plaintiffs "concede that" Defendant lacked "actual knowledge" of the glass [*See id.* at 6 n.1]. The Court addresses each argument in turn. Neither prevails.

A defendant is said to have "caused or created" a condition "where the condition is traceable to an ***act*** of the defendant" or its agent. *Wolfe v. Felts*, No. W2013-01995-COA-R3CV, 2014 WL 2462885 at *4 (Tenn. Ct. App. 2014) (citation omitted) (emphasis added). Under Plaintiffs' theory, there must be "sufficient evidence from which one could infer" that Defendant's "negligent maintenance" "created the dangerous condition." *See id.* "However, when there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements." *Id.* (cleaned up) (citing *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995)); *see also Griffin v. Wal-Mart Stores E. LP*, 30 F. Supp. 3d 717, 721 (E.D. Tenn. 2014).

6

In this case, Plaintiffs have identified no evidence showing when and how the glass that purportedly caused Mr. Penn's injury got there [*See* Doc. 38-1 at 12-13, 24 (A. Penn Dep. 29:6-30:2, 91:15-19)]. Plaintiffs concede "there is no evidence indicating exactly how long the glass was in/around the pool deck area" [Doc. 45 at 8]. Likewise, the record is devoid of evidence indicating how the glass came to be there. Against the backdrop of Defendant's prohibition on glass in the Park, performance of twice-daily checklists, and intermediate maintenance, a jury could not reasonably infer that Defendant's acts created the dangerous condition. *See Beckwith v. Wal-Mart Stores E., L.P.,* 112 F. Supp. 3d 724, 733 (W.D. Tenn. 2015) (granting summary judgment where the evidence did not show whether a piece of plastic on the ground "was more likely the result of an employee's or a patron's actions"); *see also Heinrich v. Kroger Co.,* 2 F. App'x 413 at *4 (6th Cir. 2001) (affirming where the jury could not possibly determine whether a grape on the floor of a crowded grocery store was "caused by" the "carelessness" of the defendant or a customer). Even under Dr. Osinski's view of Defendant's inspection obligations, the record does not show that the glass was present for more than ten (10) minutes such that her recommended ten-minute inspection intervals would have led to the identification of the glass [*See* Doc. 41-6 at 2 (Osinski Dep. 118:9-17)]. Thus, this argument fails.

Plaintiffs' argument that a duty of care existed based on constructive notice fairs no better. Constructive notice is "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Trentham*, No. M2021-01511-SC-R11-CV, 2025 WL 45650 at *8 (citing *Parker v. Holiday Hospitality Franchising, Inc., et al.*, 446 S.W.3d 341, 351 (Tenn. 2014)) (quotation omitted). A plaintiff may establish constructive notice in three ways: "by a showing that a dangerous condition resulted from

(1) a pattern of conduct; (2) a recurring incident; or (3) a general or continuing condition, such that its presence was reasonably foreseeable to the premises owner." *Id.* (cleaned up). Reasonable foreseeability is central to the inquiry. *Id.* at *11. But even "foreseeability alone does not establish the existence of a duty." *Id.* (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 904 (Tenn. 1996)). "The magnitude of potential harm and the burden imposed upon the Defendant must also be weighed to determine the existence of duty." *Id.* (cleaned up).

Here too, Plaintiffs argue that Defendant's alleged maintenance failures carry the day [*See* Doc. 45 at 6-10]. They do not. No reasonable jury could conclude that the presence of broken glass at the Park on July 25, 2021 was reasonably foreseeable to Defendant based on "a pattern of conduct," a "recurring incident," or a "general or continuing condition." *See Trentham*, No. M2021-01511-SC-R11-CV, 2025 WL 45650 at *8. Defendant prohibited patrons from bringing glass[3] into the Park both in word and deed—posting signs and performing manual bag checks [*See* Docs. 41-8 at 2 (Vaden Dep. 33:5-9); 41-5 at 9, 10 (Playman Dep. 33:8-14, 36:3-8)]. If glass were to make it into the Park, Defendant performed at least twice daily checks for debris and other regular checks for hazards or other issues [*See* Docs. 41-5 at 6 (Playman Dep. 29:11-22); 38-4 at 7, 9 (Kedzic Dep. 26:8-18, 28:19-25)]. Perhaps more importantly, no guest had ever reported the presence of glass in the Park before this case [Doc. 38-4 at 8 (Kedzic Dep. 27:4-7)]. And despite at least twice-daily checks, Defendant had only found glass in the Park once [*See id.* (Kedzic Dep. 27:8-21)]. The presence of glass in the Park was not "recurring conduct or [a] continuing condition." *See Bowling v. Wal-Mart Stores, Inc.*, 233 F. App'x 460, 467-68 (6th Cir. 2007); *see*

---

[3] It is true that Defendant did not prohibit eyeglasses and cellphones that may contain glass [Doc. 41-5 at 10 (Playman Dep. 36:4-24)]. But the record shows that glass from the thick part of the bottom of a bottle, not eyeglasses or a cellphone, was the only reasonably identifiable source of glass here [*See* Doc. 38-1 at 14, 15 (A. Penn. Dep. 31:10-15, 32:1-8)]. And a jury could not speculate otherwise.

8

*also Tinsley v. Wal-Mart Stores, Inc.,* 155 F. App'x 196, 198 (6th Cir. 2005). In light of the above, Plaintiffs have failed to present a triable issue regarding Defendant's alleged constructive notice of the dangerous condition.

Because Plaintiffs have not identified sufficient evidence showing that Defendant owed Mr. Penn a duty of care, their negligence claim fails. *See Trentham*, No. M2021-01511-SC-R11-CV, 2025 WL 45650 at *7. To the extent Mrs. Penn seeks damages based on a loss of consortium, "recovery is dependent upon the spouse's recovery." *Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 488 (Tenn. 2021) (citations and quotations omitted). And Mr. Penn cannot recover here. If, instead, Mrs. Penn seeks to assert her own independent claim for loss of consortium, it would also fail. *See Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557 (Tenn. 2001) ("loss of consortium is a derivative claim"). Therefore, nothing remains of this action.

### III.    Conclusion

For the above reasons, the Court **GRANTS** Defendant's "Motion for Summary Judgment" [Doc. 38] and **DISMISSES** this action with prejudice. An appropriate judgment shall enter.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge